# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-221V

| | |
|---|---|
| CLAIRE CHILAZI, *administrator of the estate of* ZAKARIA CHILAZI, | **Not to be Published** |
| Petitioner, | |
| v. | Special Master Katherine E. Oler |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Filed: July 1, 2021 |
| | Interim Attorneys' Fees and Costs |
| Respondent. | |

*David Gregory*, Rogers, Hofrichter & Karrh, LLC, Fayetteville, GA, for Petitioner.
*Lynn Schlie*, U.S. Department of Justice, Washington, D.C., for Respondent.

**DECISION ON MOTION FOR INTERIM ATTORNEYS' FEES AND COSTS[1]**

On February 15, 2017, Joelle Chilazi filed a petition as the legal representative of Claire Chilazi ("Petitioner"), administrator of the estate of Zakaria Chilazi, for compensation in the National Vaccine Injury Compensation Program ("the Vaccine Program"),[2] alleging that Mr. Chilazi's pre-existing inflammation from urinary tract infections was exacerbated as a result of the influenza vaccination he received on October 20, 2015, which in turn led to cardiac arrest and death. Pet. at 1, ECF No. 1.

---

[1] This Decision will be posted on the Court of Federal Claims' website. **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). If, upon review, I agree that the identified materials fit within this definition, I will redact such material from public access. Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

1

Petitioner filed a Motion for Interim Attorneys' Fees and Costs on April 28, 2020 requesting $63,750.35.[3] Fees App. at 2, ECF No. 44. On June 18, 2020, Respondent filed a response stating it is within my discretion to award interim attorneys' fees and costs. Fees Resp., ECF No. 36. Respondent "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." *Id.* at 2.

On April 28, 2020, Ms. Gentry, Petitioner's former counsel, filed a Motion to Withdraw as Attorney. ECF No. 45. I granted that motion on April 29, 2020.

On June 29, 2021, I issued a stipulation awarding Petitioner damages. ECF No. 65.

For the reasons discussed below, I hereby **GRANT IN PART** Petitioner's application and award a total of **$58,603.75** in interim attorneys' fees and costs.

### A. Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

---

[3] This number was calculated by Ms. Gentry, with the following breakdown: $29,629.60 for attorneys' fees, $18,549.35 for student-attorneys' fees, and $15,578.40 for litigation expenses. It is unclear where the $18,549.35 total for student-attorneys' fees is derived from although there is a footnote that states this amount is based on two different billing systems used by the GW Clinic. On pgs. 18 and 32 of the interim fees application, the breakdown of the two billing systems states $7,105.00 was recorded on one system and $16,447.35 was recorded on the other system, totaling $23,552.35. No reductions were indicated. Based on that, Petitioner is actually requesting a total of $68,760.35 in attorneys' fees and costs, not $63,750.35. Accordingly, I have used $68,760.35 as the total request in this case.

Since the petition for compensation was successful, Petitioner is entitled to reasonable attorneys' fees and costs. *See* § 15(e)(1). Reasonable attorneys' fees and costs in Vaccine Act cases are determined using the lodestar approach, which begins with an assessment of a reasonable hourly rate multiplied by a reasonable number of hours expended in the case. *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008.)

The determination of the amount of reasonable attorneys' fees is within the special master's discretion. *See, e.g., Saxton v. Sec'y of Health & Hum. Servs.,* 3 F.3d 1517, 1520 (Fed. Cir. 1993). Special masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991). Moreover, special masters are entitled to rely on their own experience and understanding of the issues raised. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 483 (1991), *aff'd in relevant part,* 988 F.2d 131 (Fed. Cir. 1993) (per curiam).

Petitioner "bears the burden of establishing the hours expended" and the reasonableness of the requested fee award. *Wasson,* 24 Cl. Ct. at 484. Notwithstanding Respondent's failure to raise any specific objections to petitioner's fee application, "the Special Master . . . [is] not limited to endorsing or rejecting respondent's critique." *Duncan v. Sec'y of Health & Hum. Servs.*, No. 99-455V, 2008 WL 4743493 (Fed. Cl. Spec. Mstr. Aug. 4, 2008). Furthermore, "the Special Master [has] no additional obligation to warn petitioners that [she] might go beyond the particularized list of respondent's challenges." *Id.*

## II. Discussion

### A. Undue Financial Hardship

Ms. Gentry and her former co-counsel, Mr. Clifford Shoemaker began working on this case in 2015 and litigated this case for five years. Furthermore, funds were expended to hire experts and to file expert reports in this case. Respondent has not filed any opposition to this fees application, thus I find it reasonable to award interim fees and costs at this juncture to avoid undue financial hardship.

### B. Attorneys' Fees

Petitioner requests $53,131.95 in attorneys' fees.

1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum.*

3

*Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[4]

Ms. Gentry requests to be compensated at an hourly rate of $400.00 for 2015; $415.00 for 2016; $424.00 for 2017; $435.00 for 2018; $445.00 for 2019; $464.00 for 2020. Mr. Clifford Shoemaker requests to be compensated at an hourly rate of $415.00 for 2015; $430.00 for 2016; $440.00 for 2017; $450.00 for 2018; and $460.00 for 2019.[5] Ms. Gentry also requests compensation for the students who worked on this case through the George Washington University Vaccine Injury Litigation Clinic a rate of $145.00 per hour. This request is consistent with what I and other special masters have previously awarded Ms. Gentry, Mr. Shoemaker, and the student attorneys at the GW Clinic. *See, e.g.*, *Davis v. Sec'y of Health & Hum. Servs.*, No. 15-159V, 2017 WL 877277 (Fed. Cl. Spec. Mstr. Feb. 7, 2017); *Smith v. Sec'y of Health & Hum. Servs.*, No. 14-982V, 2020 WL 1893464 (Fed. Cl. Spec. Mstr. Mar. 18, 2020); *Irwin v. Sec'y of Health & Hum. Servs.*, No. 16-1454V, 2020 WL 2510421 (Fed. Cl. Spec. Mstr. Apr. 9, 2020); *Hoefling v. Sec'y of Health & Hum. Servs.*, No. 18-1935V, 2020 WL 6109440 (Fed. Cl. Spec. Mstr. Sep. 14, 2020); *Temes v. Sec'y of Health & Hum. Servs.*, No. 16-1465V, 2021 WL 2375787 (Fed. Cl. Spec. Mstr. Apr. 15, 2021).

Accordingly, I find the requested rates to be reasonable and that no adjustment is warranted.

2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a

---

[4] The 2015–2016 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf.
The 2017 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.
The 2018 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.
The 2019 Fee Schedule can be accessed at:
http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

[5] Mr. Shoemaker has a total of six billing entries for 2019. Four of these entries are with an hourly rate of $460.00/hour but two entries are with an hourly rate of $445.00/hour. There is no explanation for the difference in hourly rates. I have compensated Mr. Shoemaker at a rate of $460.00 per hour in 2019, which is consistent with what he has previously been awarded.

percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26.

Petitioner's counsel has provided a breakdown of hours billed. Fees App., Ex. 1. I find the hours to be largely reasonable, but a small reduction is necessary due to billing for what appears to be administrative tasks, vague billing entries, and overbilling.[6] These entries include "Review corr", "Email to funeral director", "Review records for summary", "Review docket and update spreadsheet of clinic cases", "File review of medical records", "…collection of medical records", "document review", "draft", and corresponding with medical providers to get medical records. Because several of these entries are part of larger blocks of time, I will reduce the fees awarded by 5%.

Total fees to be awarded: **$50,475.35.**

### C. Reasonable Costs

Petitioner requests a total of $15,578.40 in costs, which includes obtaining medical records, the Court's filing fee, and expert fees. Fees App. at 33.

#### 1. Drs. Judy Mikovits and Francis Ruscetti

Petitioner requests $14,900.00 for costs related to the reports provided by Drs. Mikovits and Ruscetti. Fees App. at 34-35. Drs. Mikovits and Ruscetti have been experts in the Vaccine Program previously, however due to their lack of expertise in the relevant fields, and questionable professional history, they have never been awarded their full requested amount. *See Bertolucci v. Sec'y of Health & Hum. Servs.*, No. 15-1573, 2019 LEXIS 1152 at *10 (Fed. Cl. Spec. Mstr. Aug. 28, 2010); *Rogero v. Sec'y of Health & Hum. Servs.*, No. 11-770V, 2017 LEXIS 1200 at *58 (Fed. Cl. Spec. Mstr. Sep. 1, 2017); *Dominguez v. Sec'y of Health & Hum. Servs.*, No. 12-378V, 2018 WL 3028975 at *4 (Fed. Cl. Spec. Mstr. May 25, 2018); *McCabe v. Sec'y of Health & Hum. Servs.*, No. 13-570V, 2019 LEXIS 1127 at * 2 (Fed. Cl. Spec. Mstr. Aug. 2, 2019); *Barker v. Sec'y of Health & Hum. Servs.*, No. 16-1554V, 2019 LEXIS 1256 at *14 (Fed. Cl. Spec. Mstr. Aug. 27, 2019); *Deisher v. Sec'y of Health & Hum. Servs.*, No. 17-294, 2019 LEXIS 1563 at *8, 9 (Fed. Cl. Spec. Mstr. Oct. 2, 2019); *Rose v. Sec'y of Health & Hum. Servs.*, No. 16-1095V, 2019 LEXIS 1942 at *7 (Fed. Cl. Spec. Mstr. Oct. 21, 2019); *McKown v. Sec'y of Health & Hum. Servs.*, No. 15-1451V, 2019 WL 7604714 at *4 (Fed. Cl. Spec. Mstr. Dec. 18, 2019); *Bhattacharyya v. Sec'y*

---

[6] *See* entries on 11/17/2015, 11/19/2015, 11/20/2015, 1/5/2016, 1/6/2016, 1/7/2016, 1/8/2016, 1/11/2016, 1/30/2016, 2/9/2016, 2/10/2016, 3/18/2016, 3/21/2016 (2), 3/22/2016 (2), 4/4/2016, 5/23/2016, 7/19/2016, 10/6/2016, 10/30/2016, 11/14/2016, 1/22/2017, 1/30/2017, 2/1/2017, 2/15/2017, 2/17/2017, 2/22/2017, 4/4/2017, 4/5/2017, 4/6/2017, 4/7/2017, 5/20/2017, 6/14/2017, 8/9/2017, 8/9/2017, 8/24/2017, 9/9/2017, 9/12/2017, 9/19/2017, 9/20/2017, 9/20/2017, 9/29/2017, 9/30/2017, 10/25/2017, 11/29/2017, 5/9/2018, 12/20/2018, 7/23/2019, 2/17/2020.

*of Health & Hum. Servs.*, No. 16-195V, 2020 WL 7224308 (Fed. Cl. Spec. Mstr. Nov. 13, 2020); *A.W. v. Sec'y of Health & Hum. Servs.*, No. 17-1349V, 2020 WL 7233191 (Fed. Cl. Spec. Mstr. Nov. 13, 2020).

Dr. Mikovits is a not a medical doctor but has a Ph.D. in biochemistry and molecular biology. Ex. 23 at 4. Dr. Ruscetti is also not a medical doctor and has a Ph.D. in microbiology. Ex. 24 at 1. Drs. Mikovits and Ruscetti have neither clinical experience nor a relevant educational background to persuasively opine on the issues in this case.

Dr. Mikovits additionally has a questionable professional history, which led to her arrest and firing from her previous position and has frequently espoused personal beliefs disputing the safety of vaccinations and promulgating the debunked theory that vaccines cause autism, summarized by Chief Special Master Corcoran. *See McKown*, 2019 WL 7604714 at *4.

The expert reports written by Drs. Mikovits and Ruscetti, in line with their prior history of providing reports in the Program, were subpar. The first report submitted was four pages long, which included two pages of Mr. Chilazi's medical history. *See* Ex. 22. Regarding the theory of causation, the report broadly stated that the vaccination Mr. Chilazi received, in combination with recurrent UTI and CDiff infections in April and August of 2015, "led to the overstimulation of pro-inflammatory cytokines including IL-6 and IL-8, resulting in acute heart failure." Ex. 22 at 3. The report further stated that "at the time of the 10/20/2015 Fluvirin vaccine, Z.C. could have had higher levels of pro-inflammatory cytokines because of the recurrent infections and disruption of the innate immune response and microbiome." Such a speculative statement does not enable Petitioner to meet her burden of establishing that the vaccine did cause Mr. Chilazi's condition, by a preponderance of the evidence.

The second report submitted by Drs. Mikovits and Ruscetti contained answers to additional questions I had, due to the lack of substance in their first report. This second report was four pages long and similarly lacked a persuasive explanation for how the vaccination Mr. Chilazi received caused his cardiac arrest. *See generally* Ex. 29.

Petitioners have been warned by multiple special masters to not use Drs. Mikovits and Ruscetti as experts or risk having their expert costs go unawarded. *See Dominguez*, 2018 WL 3028975, at *5; *McKown*, 2019 WL 7604714, at *5. In fact, Special Master Horner denied compensation for expert reports written by Dr. Ruscetti based on many of the factors explained above, but also statements made that were "unreliable at best and intentionally misleading at worst". *See Bhattacharyya*, 2020 WL 7224308 at *5; *cf. A.W.*, 2020 WL 7233191 at *1 (granting 50% of expert costs for reports written by Dr. Ruscetti). Because Drs. Mikovits and Ruscetti were hired prior to the issuance of these decisions, I will reduce their expert costs in line with my colleagues, rather than refuse to award them in their entirety. As such, I reduce Drs. Mikovits and Ruscetti by 50%. I join Special Master Moran in warning future petitioners who hire Drs. Mikovits and Ruscetti that they may not be compensated for their expert reports.

Expert costs to be awarded: $7,450.00.

2. Petitioner's Miscellaneous Costs

I have reviewed Petitioner's remaining costs totaling $678.40, which include the Court's filing fee and the costs associated with requesting medical records. *See* Fees App. at 33. These costs are reasonable, and I award them in full.

Total costs to be awarded: **$8,128.40.**

## II. Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

A lump sum in the amount of **$58,603.75** representing reimbursement of Petitioner's interim attorneys' fees and costs in the form of a check jointly payable to Petitioner and her former attorney, Renée Gentry.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[7]

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.